# United States District Court

for the

District of Colorado

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No.   19-sw-05851-GPG |
| Obtain Precise Location Information and Date/GPS Information on a Cellular Telephone Assigned Call Number 970-201-3790 with IMSI 310120241513170 | ) ) ) | |

## APPLICATION FOR A SEARCH WARRANT

I am a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A attached hereto and hereby incorporated by reference.

located in the _____ State and _____ District of _____ Colorado _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B attached hereto and hereby incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 875(c) | Interstate transmission of communications containing threats to kidnap or injure. |

The application is based on these facts:

See Affidavit attached hereto and hereby incorporated by reference.

☑ Continued on the attached affidavit, which is incorporated by reference.

☑ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_s/ John Busch_

*Applicant's signature*

John Busch, Specal Agent, FBI

*Printed name and title*

Sworn to before me and: ☐ signed in my presence.

☒ submitted, attested to, and acknowledged by reliable electronic means.

Date: __8/29/2019__

City and state: _____ Grand Junction, Colorado _____

_____

*Judge's signature*

Gordon P. Gallagher - Magistrate Judge

*Printed name and title*

## AFFIDAVIT

I, John Busch, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number 970-201-3790, with International Mobile Subscriber Identity 310120241513170 (the "Target Cell Phone"), whose service provider is Sprint a wireless telephone service provider headquartered at 6200 Sprint Parkway, Overland Park, Kansas 66251.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require Sprint to disclose to the government copies of the information further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2.      I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since June 14, 2015. Prior to my current position I was a sworn police officer for five and a half years in local law enforcement.  I am currently assigned to investigate a wide variety of federal criminal violations to include interstate threatening communications, domestic and international terrorism, violent crimes, public corruption, computer crimes, fraud against the government, drug crimes, and other violations.  As part of my training and experience, I have participated in investigations involving cell phone tracking, United States Postal Service mailings, and threats of violence.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 875(c) have been committed, are being committed, and/or will be committed by Daniel Albert GALLEGOS.  There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations.

5.      The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711.  Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

**PROBABLE CAUSE**

6.      The United States, including the FBI, is conducting a criminal investigation of Daniel Albert GALLEGOS, regarding possible violations of 18 U.S.C. § 875(c).

7.      On August 23, 2019, I became aware of a letter received by the Bradford County Sheriff's Office; located in Starke, Florida.  The envelope that contained the letter had a return address for "Robert Rente" at "967 Talia Way, Chino Valley AZ 86323" and a mailing address of "945 N Temple Ave B, Starke, FL 32091."  The letter had a United States Postal Service sorting and processing stamp on it that indicated it was sent from Grand Junction, Colorado on August 17, 2019.  The postage stamp on the envelope was a forever stamp with a barcode and correlating numbered code.

2

8.      Within the envelope were three photo copied notebook pages with a hand written letter.  According to Bradford County Sheriff's Office investigators, the letter that was sent to them had white out over sections where the author wrote about mental health diagnoses.  The letter also had "Moab" "Grand County" and "Delta County" written in white out on the letter.  A scan of the letter is below:

I have the urge to write. I am currently having a lot of trouble with my homicidal ideation, I don't know why. I'm just obsessed with murder. Last Psychiatrist said it was intrusive thinking indicated by _____. He also diagnosed me with _____. One psychiatric nurse practitioner thought I had antisocial personality disorder. I know personally that I have that. Lately, my urges and compulsions have been incontrollably strong. Every time I see young beautiful females, ages 15-30, I so badly wish to lure them to my van, take them to a remote location, and pleasure them. I don't need them to physically please me. Touching them and giving them an orgasm will turn me on just fine. When they are thoroughly pleasured. I want to strangle them, either with my hands or a ligature. At that time I will undress their body, if I haven't already, to dispose of the evidence from being in my van. I will then wash them, their neck, breasts, and vagina, which I may likely deposit saliva while pleasuring them. I will then dust them with flour. I may then use pruners to

Fingerprint Free! ☺

No Empathy
No Remorse
Detatched

evergreen state → gym
state → beehive state →
The Centennial State

3

remove their fingers to throw
in every direction, to increase the
size of the crime scene and
throw off law enforcement. I
may or may not at that time
decapitate the body, so that I
can play with the head in a
different location, if I have a
secure location. I will not risk
detection. I will retreat to a safe
location to remember, fantasize,
and masturbate until I am sexually
satisfied. I have steps I need to
complete before I can hunt and
capture.

- install eyebolt on floor of van
  to which handcuffs may be attached.
- Disable passenger door handle
- Disable power window switch on
  passenger door
- Purchase handcuffs
- Purchase flour
- Purchase meat hand saw and pruners
- purchase stretch wrap for
  passenger seat
- purchase latex gloves
- purchase cannabis product to
  relax the woman/girl.
- purchase bags for transport of
  head and fingers in case of struggle
  and scratching occurring.
- collect cigarette butts to distribute
  at crime scene, and hair from
  barber shop or hair brushes that I find.

Sexually deviant since childhood

Will need LOTS of Flour

4

I have been admitted to a
psychiatric hospital for homicidal
ideation. at which time I was
misdiagnosed with OCD and MD.
This will prove to be a grave mistake.
My urges are stronger than ever,
The only thing that will save me
and countless women is love,
I am trying to date a woman from
~~~~~~~~~ Hope, and fate
hangs on by a thread, I may
anonymously contact a therapist
online to speak of my plans,
I await the response from this
woman I hope to date. God have
mercy on us all if I am rejected
by yet another woman

      I'd sign but that would be too easy ☺

      RMGREENIEGDLSRLFA

One of us is DISTURBED

★ 38,8784 °N
104,8698 °W   ♡

May be 3 people
in 1 body
you figure it out

P.S. I may also be bipolar, which means
I am prone to drastic actions during mania.
If you think this is a joke, think again,
Clock's ticking. My control wavers. ☺

Thought you deserved a head start,
sort of . . .

5

9.       The letter discusses the writer's intent to kidnap, murder, and dismember women between the ages of fifteen and thirty years old.  The letter also includes detailed descriptions of the writer's plan to avoid detection and "throw off law enforcement."  Finally, the letter ends with "If you think this is a joke, think again.  Clock's ticking.  My control wavers." Accordingly, the letter clearly establishes a communication containing a threat from the writer to kidnap and injure the person of another.  Finally, the letter was sent to Florida from Grand Junction, Colorado, and therefore, was sent in interstate commerce.

10.       The barcode and correlating numbered code on the postage stamp are used in part to track where the stamp was purchased.  The United States Postal Inspection Service searched their internal record keeping and found records indicating that the stamp, along with two others, was purchased on August 17, 2019, at 12:37 PM, at a postage kiosk located at the United States Post Office at 241 North 4th Street, Grand Junction, CO 81501.  The kiosk also captured a surveillance photograph of the person purchasing the stamp.  The record system also recorded the full credit card number of the credit card used for payment.  The credit card ended in 5077.

11.       I determined the credit card was a Net Spend Corporation credit card.  Through additional legal process, I obtained account information for the credit card ending in 5077 from the Net Spend Corporation.  This information included account owner details, transaction histories, and other information.  The owner details showed the owner as DANIEL A GALLEGOS, with an address of 1535 Poplar Dr, Apt 18, Grand Junction, CO, a phone number of 970-201-3790, an email of dag4170@gmail.com, and other identifying information.  I searched law enforcement databases with the owner details and found a match for the Daniel Albert GALLEGOS, whom this affidavit is in reference to.

6

12.     I received a photograph from GALLEGOS' driver's license and a photograph from a domestic violence arrest/booking by Mesa County Sheriff's Office in June 2019; these known photographs matched the individual who purchased the stamp in the postage kiosk surveillance photograph.

13.     The transaction history of the credit card showed a transaction that occurred at the Grand Junction, CO Walmart Supercenter on August 15, 2019.  I went to the Walmart Supercenter located at 2545 Rimrock Ave, Grand Junction, CO and retrieved a receipt showing that the credit card ending in 5077 purchased white out, beef jerky, and envelopes on August 15, 2019 at 10:40 PM.  I reviewed the video surveillance footage of the transaction and confirmed that it was GALLEGOS making the purchase.  Through the surveillance footage, I observed that GALLEGOS had driven a silver minivan to Walmart and after the purchase slept in the minivan in the Walmart lot until approximately 10 AM the following day.  Registered to GALLEGOS is a Silver, 2005, Chrysler Town and Country Minivan bearing license plate 324GLQ and VIN 1C4GP45R95B175321.  The incident of domestic violence from June, 2019, in which GALLEGOS was arrested also occurred in a minivan.  The size of the envelopes were the same size envelopes as the one received by Bradford County and the following described letters received by the Denver Police Department and Seattle Police Department.

14.     On August 27, 2019, Detective Marshall of the Denver Police Department advised SA Busch that Denver 7, the ABC news channel, received a letter with a postage stamp that had at least 14 out of 15 characters identical to the Bradford County letter postage stamp. The last character was not legible due to the USPS sorting and processing stamp over the postage stamp.  Having 14 out of 15 characters identical to the Bradford County letter postage stamp indicates that these stamps were purchased in the same transaction.  The USPS sorting and

7

processing stamp was the same as the Bradford County letter stamp: Grand Junction, CO on

August 17, 2019.  A copy of the letter is below:



8

15.     A third letter was received by the Seattle Police Department.  That letter was identical to the letter received by Bradford County.  The envelope of the Seattle letter had a postage stamp with the exact 15 digit numerical barcode number as the Bradford County postage stamp.  The USPS sorting and processing stamp also showed it was sorted through Grand Junction, CO on August 17, 2019.

16.     Other information obtained through this investigation regarding GALLEGOS corroborates details in the letters, establishing GALLEGOS is the author of the letters.

a.     On October 19, 2018, Grand Junction Police Department ("GJPD") responded to GALLEGOS' home after his wife reported him to be threatening suicide. GALLEGOS told the responding officer that he felt like killing anyone and that his medications were off.  Gallegos was given a ride to Mind Springs, a mental health center.

b.     On November 14, 2018 GJPD again responded to GALLEGOS' home after his wife reported him to be armed with a knife and threatening suicide. GALLEGOS spoke about being cannibalistic and that he was going to eat people. GALLEGOS was given a ride to Mind Springs.

c.     On January 13, 2019 Law Enforcement again responded to a report that GALLEGOS wanted to kill himself.

d.     Through an open records search, the FBI found postings on a website, psychcentralforums.com, from user name Dag4170 from August 2019.  Dag4170 is the prefix for GALLEGOS' email: Dag4170@gmail.com, and DAG are his initials. Dag4170's postings include speaking about his diagnosis of Antisocial Personality Disorder among other disorders.  Dag4170 questions if he is a psychopath and mentions that he would manipulate his recent ex-wife.  GALLEGOS' wife has recently filed for

9

divorce.  In one post, Dag4170 wrote, "The twisted things I have compulsions are very unpleasant.  Talking about it usually gets me in trouble.  I won't even tell a therapist about it after they went all Tarsoff [sic] on my ***.  I lost my job because of the Tarasoff rule."  The Tarasoff rule is in reference to a case where it was decided that mental health providers have a duty to warn.  GALLEGOS lost his job in February of 2019 after his work was notified of his homicidal ideations.

17.     In June 2019, GALLEGOS' was arrested after his wife reported that GALLEGOS pushed her out of a vehicle.  Upon GALLEGOS' arrest, he gave his phone number as 970-201-3790, the number associated with the Target Cell Phone.

18.     The subscriber name and address for the Target Cell Phone is Daniel Gallegos 1535 Poplar Dr., Grand Junction, CO 81505. The primary user of the phone is believed to be GALLEGOS.  The historical cell tower information will show whether GALLEGOS was in the area of the post office at the time the letter was sent.

19.     In my training and experience, I have learned that Sprint is a company that provides cellular telephone access to the general public.  I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records.  E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.  Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and,

10

in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These

towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles

apart in rural areas.  Furthermore, the tower closest to a wireless device does not necessarily

serve every call made to or from that device.  Accordingly, cell-site data is typically less precise

that E-911 Phase II data.

20.     Based on my training and experience, I know that Sprint can collect historical and

prospective cell-site data about the Target Cell Phone.  Based on my training and experience, I

know that for each communication a cellular device makes, its wireless service provider can

typically determine: (1) the date and time of the communication; (2) the telephone numbers

involved, if any; (3) the cell tower to which the customer connected at the beginning of the

communication; (4) the cell tower to which the customer connected at the end of the

communication; and (5) the duration of the communication.  I also know that wireless providers

such as Sprint typically collect and retain cell-site data pertaining to cellular devices to which

they provide service in their normal course of business in order to use this information for

various business-related purposes.  In my training and experience, this information may

constitute evidence of the crimes under investigation because the information can be used to

identify the Target Cell Phone's user or users and may assist in the identification of a fugitive, of

co-conspirators, and/or victims.

## AUTHORIZATION REQUEST

21.     Based on the foregoing, I request that the Court issue the proposed search

warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

22.     I further request that the Court direct Sprint to disclose to the government any

information described in Section I of Attachment B that is within its possession, custody, or

11

control. Because the warrant will be served on Sprint, who will then compile the requested

records at a time convenient to it, reasonable cause exists to permit the execution of the

requested warrant at any time in the day or night.

23. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal

Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until

30 days after the collection authorized by the warrant has been completed. There is reasonable

cause to believe that providing immediate notification of the warrant may have an adverse result,

as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the

Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure

would give that person an opportunity to destroy evidence, change patterns of behavior, notify

confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in

Attachment B, which is incorporated into the warrant, the proposed search warrant does not

authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the

extent that the warrant authorizes the seizure of any wire or electronic communication (as

defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable

necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

24. I further request that the Court direct Sprint to disclose to the government any

information described in Attachment B that is within the possession, custody, or control of

Sprint**.** I also request that the Court direct Sprint to furnish the government all information,

facilities, and technical assistance necessary to accomplish the collection of the information

described in Attachment B unobtrusively and with a minimum of interference with Sprint's

services, including by initiating a signal to determine the location of the Target Cell Phone on

12

Sprint's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.

25.    I further request that this Court order the Sprint not to notify the subscriber of the existence of the warrant; the requested warrant relates to GALLEGOS' ability to avoid flight from prosecution by becoming aware that law enforcement has identified him or GALLEGOS' destroy evidence after becoming aware that law enforcement has identified him. See 18 U.S.C. § 2705(b)(2), (3), (5)]].

26.    I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

Respectfully submitted,

_s/ John Busch_____
John Busch
Special Agent
FBI


Submitted, attested to, and acknowledged by reliable electronic means on August _____29_____, 2019.

_____
GORDON P. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

**Affidavit reviewed and submitted by AUSA Jeremy Chaffin.**

13

**ATTACHMENT A**

**Property to Be Searched**

1. The cellular telephone assigned call number 970-201-3790, with International Mobile Subscriber Identity 310120241513170, with listed subscriber Daniel Gallegos (the "Target Cell Phone"), whose wireless service provider is Sprint, a company headquartered at 6200 Sprint Parkway, Overland Park, Kansas 66251.

2. Records and information associated with the Target Cell Phone that is within the possession, custody, or control of Sprint, including information about the location of the cellular telephone if it is subsequently assigned a different call number.

# ATTACHMENT B

## Particular Things to be Seized

**I.**     **Information to be Disclosed by the Provider**

1.   To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period of August 13, 2019 to the execution of this warrant:

   b.   The following information about the customers or subscribers of the Account:

   i.   Names (including subscriber names, user names, and screen names);
   ii.   Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);
   iii.   Local and long distance telephone connection records;
   iv.   Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;
   v.   Length of service (including start date) and types of service utilized;
   vi.   Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");
   vii.   Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and
   viii.   Means and source of payment for such service (including any credit card or bank account number) and billing records.

   c.   All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:
   i.   the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and
   ii.    All historical location information, including data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the Account for the time period listed above.

     d.   The Provider shall deliver the information set forth above within 7 days of the service of this warrant and the PROVIDER shall send the information via facsimile or United States mail, and where maintained in electronic form, on CD-ROM or an equivalent electronic medium, to:

> Special Agent John Busch
> FBI, 400 Rood Ave, Suite 218, Grand Junction, CO 81502
> jfbusch@fbi.gov

2. This warrant does not authorize the seizure of any tangible property.  In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.     Information to be Seized by the Government

1. All information described above in Section I that constitutes evidence, fruits, contraband, and instrumentalities of violations of 18 U.S.C. § 875(c) involving Daniel Alfred GALLEGOS during the period August 13, 2019 through execution of this search warrant, including the following:

     a.   All location information on dates on which purchases or mailings identified during this investigation occurred.

II.     Pursuant to 2703(g), the presence of an agent is not required for service or execution of this warrant.

III.     Pursuant to 18 U.S.C. §§ 2703(b)(1)(A) and 2705(b)(1), the Court orders **Sprint** not to disclose the existence of this warrant to the subscriber for a period of ONE YEAR from the date of this warrant's issuance.

## <u>CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)</u>

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct.  I am employed by Sprint, and my title is _____.  I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved.  I state that the records attached hereto are true duplicates of the original records in the custody of Sprint.  The attached records consist of

_____
_____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**.  I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Sprint, and they were made by **Sprint** as a regular practice; and

b.      such records were generated by **Sprint's** electronic process or system that produces an accurate result, to wit:

1.      the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Sprint in a manner to ensure that they are true duplicates of the original records; and

2.      the process or system is regularly verified by **Sprint**, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____      _____
Date                                Signature